UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                CRIMINAL NO. 09-20224

    v.                     DISTRICT JUDGE VICTORIA A. ROBERTS

GEORGE WILLIAMS (D-1),       MAGISTRATE JUDGE VIRGINIA M. MORGAN

       Defendant.[1]

_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

      This matter comes before the court on defendant George Williams' Motion to Suppress Evidence Obtained or Derived From Illegal Interception (D/E #126).[2]  The government filed a response in opposition to the motion (D/E #137) and this court heard oral arguments with respect to the motion on January 11, 2010.  For the reasons discussed below, the court recommends that defendant George Williams' motion be **DENIED** and that the evidence obtained or derived from the wiretaps in this case not be suppressed.

_____

[1]Defendant George Williams was indicted along with ten co-defendants: Brandon Williams, Nancy Williams, Yolando Young, Ernest Larry Adams, Webb Smith, Neil Chapple, Gregory Palmer, Nathaniel Darryl Williams, Anthony Richardson, and Katrina Lyons.

[2]Co-defendants Chapple (D/E #127), Palmer (D/E #128), Nancy Williams (D/E #129), Brandon Williams (D/E #130), and Adams (D/E #132) all joined in George Williams' motion to suppress.

## II. Background

### A. Indictment

In this case, defendant George Williams and ten co-defendants are charged together in an Indictment (D/E #4).  In the "General Allegations" section of the indictment, the government alleges that the named defendants and others engaged in a scheme and pattern of illegal conduct involving prescription drug controlled substances and fraudulent health care billings. (Indictment, p. 1)  The Indictment alleges that George Williams organized and operated a purported health care business under the name Quick Response Medical Professionals, P.C. ("QRMP").  (Indictment, pp. 1-2)  Brandon Williams and Nancy Williams assisted in the creation and operation of QRMP.  (Indictment, p. 3)  Brandon Williams and Nancy Williams are also alleged to have caused fraudulent Medicare billings.  (Indictment, p. 3)

According to the Indictment, George Williams recruited fake patients to see doctors employed by QRMP, with QRMP employee Yolanda Young scheduling the visits and instructing the patients to ask for particular controlled substance prescriptions with a high street value.  (Indictment, p. 2)  Other employees of QRMP included Gregory Palmer and Darryl Williams, who transported most of the patients, and Anthony Richardson, who worked as a security guard protecting the cash and keeping order.  (Indictment, p. 2)

The patients were paid up to $220 for their time and use of their Medicare card, but they did not retain the prescriptions.  (Indictment, p. 2)  The prescriptions were retained by George Williams, who had them filled at various cooperating pharmacies.  (Indictment, p. 2)  The controlled substances were then picked up by George Williams, Webb Smith, and/or Ernest

Larry Adams.  (Indictment, p. 2)  Employees such as Smith or Adams were then directed to

deliver the controlled substances to distributers in exchange for money.  (Indictment, p. 2)  One

of the alleged distributers was Katrina Lyons.  (Indictment, pp. 2-3)

George Williams is charged in Count One ("21 U.S.C. §§ 846, 841(a)(1) - Conspiracy to

Distribute and Possess with Intent to Distribute Controlled Substances"); Count Two ("18 U.S.C.

§1347 - Health Care Fraud"); Count Three ("42 U.S.C. §1320a-7b - Unlawful Payments");

Count Five ("21 U.S.C. § 841(a)(1) - Possession with Intent to Distribute Controlled Substances

- Cough Syrup with Codeine"); Count Seven ("21 U.S.C. § 841(a)(1) - Possession with Intent to

Distribute Controlled Substances -Oxycodone"); Counts Nine-Seventeen ("21 U.S.C. § 841

(a)(1), 18 U.S.C. § 2 - Possession with Intent to Distribute a Controlled Substance, aiding and

abetting"); and Count Eighteen ("Forfeiture Allegations (18 U.S.C. 981(a)(1)(C), and 28 U.S.C.

2461(c); 21 U.S.C. § 853)")

### B. Motion to Suppress

On December 11, 2009, George Williams filed the Motion to Suppress Evidence

Obtained or Derived From Illegal Interception pending before the court (D/E #126).  In that

motion, George Williams asserts that, prior to filing the Indictment, the United States Attorney

intercepted numerous wire telecommunications among the alleged co-conspirators in this case,

including communications involving George Williams as a participant in or subject of the

communications.  George Williams argues that the electronic surveillance and interception were

unlawful and suppression is required in this case.  According to George Williams, the Title III

Applications and the Affidavits to the Applications failed to show necessity, or that other

investigative procedures had been tried and failed, had been exhausted, and/or why they reasonably appeared to be unlikely to succeed if tried or to be too dangerous. George Williams also argues that the execution of search warrants would have revealed all other information sought by the government and that additional discovery further belies Special Agent Dziedzic's claims of "necessity" for the wire tap.[3]

On January 4, 2010, the government filed a response to George Williams' motion to suppress (D/E #137). In that response, the government argues the terms "need" and necessity" in the defendant's motion are misnomers, since neither term appears in the relevant statute and the relevant statute only requires "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." The government also argues that the affidavits of Special Agent Dziedzic contains "information about particular facts of the case at hand" which demonstrates that serious consideration had been given to the use of non-wiretap techniques; that they were used beforehand with limited success; and that the continued use of these non-wiretap techniques or the use of other non-wiretap techniques that reasonably suggested themselves would in all likelihood be inadequate in achieving the goals of the investigation. According to the government, the affidavits were therefore sufficient and the evidence should not be suppressed.

### C. Applicable Legal Standards

---

[3]As noted above, co-defendants Chapple (D/E #127), Palmer (D/E #128), Nancy Williams (D/E #129), Brandon Williams (D/E #130), and Adams (D/E #132) all joined in George Williams' motion to suppress.

Title 18 U.S.C. § 2518(1)(c) provides that each application for a wiretap submitted to a District Judge shall include: "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Title III surveillance may be authorized only if (1) "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous," and (2) an application includes a "a full and complete statement" to this effect. 18 U.S.C. § 2518(3)(c), (1)(c).

One purpose of the requirement is "to ensure that a wiretap 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" United States v. Alfano, 838 F.2d 158, 163 (6th Cir. 1988), cert. denied, 488 U.S. 821 (1988) (quoting United States v. Kahn, 415 U.S. 143, 153 n. 12 (1974)). Stated another way, the purpose of the necessity requirement "is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." United States v. Landmesser, 553 F.2d 17, 20 (6th Cir. 1977) (quoting United States v. Pacheco, 489 F.2d 554, 565 (5th Cir. 1974)).

Nevertheless, "the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." United States v. Giacalone, 853 F.2d 470, 480 (6th Cir. 1988) (quoting Alfano, 838 F.2d at 163. "All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons

for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." <u>Alfano</u>, 838 F.2d at 163-64 (quotation omitted).  If less intrusive techniques do not suffice to expose the entire criminal conspiracy, then electronic surveillance is warranted.  <u>See United States v. Maxwell</u>, 25 F.3d 1389, 1394 (8th Cir. 1994); <u>U.S. v. Cooney</u>, 26 Fed. Appx. 513, 522 (6th Cir. 2002).  Moreover, "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." <u>Cooney</u>, 26 Fed. Appx. at 522 (quoting <u>United States v. Steinberg</u>, 525 F.2d 1126, 1130 (2d Cir. 1975)).

### D. Summary of Wiretap Applications

During the investigation, the government filed several applications to intercept wire and electronic communications.  On August 5, 2008, the government filed an application to intercept communications as to Target Telephone 1, a telephone used by defendant Young.  On September 5, 2008, the government filed an application to continue its interception of communications relating to Target Telephone 1.  On October 7, 2008, the government filed an application to intercept communications as to Target Telephone 2 and Target Telephone 3, telephones used by defendant George Williams.  On November 6, 2008, the government filed an application to continue its interception of communications relating to Target Telephones 2 and 3. The Honorable Avern Cohn granted each of those applications.

Special Agent Christopher Dziedzic of the Drug Enforcement Administration ("DEA") filed affidavits in support of the applications.  As noted by defendant, three of Special Agent Dziedzic's affidavits contains the following statement:

> Since this affidavit is being submitted for the limited purpose of securing authorization for the interception of wire communications, I have not included each and every fact know to me concerning this investigation.  I have only set forth the facts I believe are essential to establish the necessary foundation for an order authorizing the interception of wire communications.

[August 5, 2008 affidavit, ¶ 2; September 5, 2008 affidavit, ¶¶22-34, pp. 15-22; October 7, 2008 Affidavit, ¶ 2; November 6, 2008 Affidavit, ¶ 2]

Each affidavit also contains include a lengthy portion dedicated to meeting the government's obligation of showing that alternative means of investigation had been given serious consideration.  (August 5, 2008 Affidavit, ¶¶ 43-56, pp. 20-27; September 5, 2008 Affidavit, ¶¶ 22-34, pp. 15-22; October 7, 2008 Affidavit, ¶¶ 33-42, pp. 8-12; November 6, 2008 Affidavit, ¶¶ 18-32)

In his first affidavit in support of the application to intercept wire and electronic communications as to Target Telephone 1, Special Agent Dziedzic stated that

> I believe the interception of wire communications of the **INTERCEPTEES** and others yet unknown on **Target Telephone 1** is the only available investigative technique which has a reasonable likelihood of revealing and securing admissible evidence needed to establish the full scope and nature of the offenses being investigated, including determining the identity of all the members of the organization, to include pharmacies and other medical doctors.  The make up of the organization, locations used to conduct illegitimate medical examinations, locations used to conceal prescriptions, and scheduled controlled substances.

(August 5, 2008 Affidavit, ¶ 44) (emphasis in original)  According to Special Agent Dziedzic, a wiretap was necessary because "normal investigative techniques have been used and have not succeeded in achieving the goals of the investigation, or have been tried and failed or had only

limited success, or reasonably appear to be unlikely to succeed if tried, or they are too dangerous to employ." (August 5, 2008 Affidavit, ¶ 43)

 With respect to the normal investigative techniques used, Special Agent Dziedzic discussed the use of confidential sources. According to Special Agent Dziedzic, in March of 2008, he was told by a confidential source, CS1, of a location where a Dr. Ebreo was had been and was currently seeing patients on behalf of QRMP. (August 5, 2008 Affidavit, ¶ 18) CS1's initial reports were confirmed by the Michigan Automated Prescription System (MAPS), which showed that CS1 was seen on multiple occasions by Dr. Ebreo and CS1 has been cooperating with DEA since March of 2008. (August 5, 2008 Affidavit, ¶ 23) According to CS1, visits were scheduled by Yolando Young using Target Telephone 1 and CS1 had been scheduled by Young and seen by Dr. Ebreo on multiple occasions. (August 5, 2008 Affidavit, ¶ 18) On July 2, 2008, Special Agent Dziedzic monitored a consensual telephone call placed by CS1 to Target Telephone and the subsequent conversation between CS1 and Young. (August 5, 2008 Affidavit, ¶ 30) CS1 tried to scheduled a visit, but Young said the rest of the week was booked. (August 5, 2008 Affidavit, ¶ 30) Young also said she did not think that CS1 was coming back since Young had heard that "feds . . . like DEA" came to CS1's residence. (August 5, 2008 Affidavit, ¶ 30) CS1 denied this and again asked for an appointment, but Young said she would have to check and get back with CS1 because Young no longer schedules appointments. (August 5, 2008 Affidavit, ¶ 30) Special Agent Dziedzic believes Young said this because she suspects CS1 is cooperating with law enforcement and did not want to talk to her. (August 5, 2008 Affidavit, ¶ 30) CS1 called again on July 8, 2008 and spoke with Young. (August 5, 2008

Affidavit, ¶ 31)  Special Agent Dziedzic again recorded the conversation, in which CS1 further inquired about an appointment and Young stated Dr. Ebreo's assistant had not given her one yet. (August 5, 2008 Affidavit, ¶ 31)  Young said she would call CS1 with the information when the assistant gave it to her.  (August 5, 2008 Affidavit, ¶ 31)

Young had not called back as of July 16, 2008 and Special Agent Dziedzic believes it was because of her suspicions about CS1.  (August 5, 2008 Affidavit, ¶ 32)  Special Agent Dziedzic also believed that, given the conversations between CS1 and Young, his attempt to insert a confidential source into the QRMP organization for the purpose of obtaining further evidence of illegitimate prescription writing by Dr. Ebreo was unsuccessful and that any use of confidential sources would be unsuccessful.  (August 5, 2008 Affidavit, ¶ 46)

Additionally, Special Agent Dziedzic stated in his affidavit that use of an undercover agent would also be unsuccessful because Special Agent Dziedzic did not have a way to introduce an undercover agent into the organization, as each new fake patient is recruited and introduced to Young be established fake patients.  (August 5, 2008 Affidavit, ¶ 46)  Moreover, according to Special Agent Dziedzic, an undercover agent attempting to set up an appointment on his own would only confirm the suspicions of the targets that they were being investigated and that, even if an undercover agent successfully became a patient, he would not be privy to all co-conspirator conversations and would not be able to expose all subjects of the investigation. (August 5, 2008 Affidavit, ¶ 46)

Special Agent Dziedzic's affidavit also discussed the use of physical surveillance. According to Special Agent Dziedzic, physical surveillance is used to confirm meetings and

other suspected activities between alleged participants, but the surveillance observations by themselves are generally insufficient to prove the purpose of the meetings and other activities. (August 5, 2008 Affidavit, ¶ 47)  Special Agent Dziedzic further stated in his affidavit that, based on his experience, it is extremely difficult to avoid detection and conduct surveillance of major drug traffickers over an extended period of time, especially in a quiet residential neighborhood and where law enforcement must keep a blanket surveillance on hand since they do not know the times of meetings.  (August 5, 2008 Affidavit, ¶ 48)  Furthermore, according to the affidavit, while physical surveillance alone is unlikely to establish the roles of the names conspirators, to identify additional conspirators or otherwise provide admissible evidence in regard to the investigation (August 5, 2008 Affidavit, ¶ 49), physical surveillance combined with intercepted calls could constitute valuable proof of the criminal activities inside the residence (August 5, 2008 Affidavit, ¶ 48).

The third investigative techniques used discussed by Special Agent Dziedzic was the evaluation of toll records for Target Telephone 1.  According to Special Agent Dziedzic, those records are insufficient because they provide only circumstantial evidence that the telephone to be monitored was used, they do not identify who made the call or who received it, and they do not provide the content of the calls.  (August 5, 2008 Affidavit, ¶ 53)

With respect to the normal investigative techniques that reasonably appeared to be unlikely to succeed if tried or they are too dangerous to employ, Special Agent Dziedzic first discussed the use of Closed Circuit Pole Cameras ("CCTV").  According to Special Agent Dziedzic, CCTV are not very useful because they are stationary and only capture the presence of

individuals at very precise locations.  (August 5, 2008 Affidavit, ¶ 50)  Furthermore, Special

Agent Dziedzic also noted that most of the overt criminal activities in this case appear to take

place inside buildings.  (August 5, 2008 Affidavit, ¶ 50)

Special Agent Dziedzic also rejected the use of trash searches because, through his

experience, he knows that drug traffickers go to great lengths to destroy possibly incriminating

evidence and such searches are unlikely to succeed.  (August 5, 2008 Affidavit, ¶ 51)

Another investigative technique expressly rejected by Special Agent Dziedzic was the

use of consensual calls and recording those calls.  As stated in the affidavit, "[t]ypically,

narcotics traffickers are extremely careful when engaging in criminal conversations and will not

tend to engage in such conversations with unknown individuals."  (August 5, 2008 Affidavit, ¶

52)  Also, in Special Agent Dziedzic's view, calls from unknown individuals could cause

suspicion.  (August 5, 2008 Affidavit, ¶ 52)

Special Agent Dziedzic's affidavit also discussed the use of a Grand Jury investigation or

interviewing the interceptees or their associates directly.  According to Special Agent Dziedic,

either of those techniques would not be successful in exposing the full nature and scope of the

criminal activity or the identity of all participants.  (August 5, 2008 Affidavit, ¶ 54)

Additionally, Special Agent Dziedzic believed that any attempt to start a Grand Jury

investigation or interview a suspect would also alert suspects to the investigations, causing them

to become more cautious or flee to avoid further investigation.  (August 5, 2008 Affidavit, ¶ 54)

Lastly, Special Agent Dziedzic noted that, if they were subpoenaed, the targets would refuse to

testify and a grant of immunity would foreclose prosecution.  (August 5, 2008 Affidavit, ¶ 54)

The final investigative technique expressly rejected by Special Agent Dziedzic was the use of search warrants.  According to Special Agent Dziedzic, the use of search warrants was premature and it would only alert suspects to the investigation and prevent law enforcement from identifying the full scope of the conspiracy as well as other co-conspirators.  (August 5, 2008 Affidavit, ¶ 55)

In his second affidavit, which was made in support of an application seeking authorization for the continued interception of wire and electronic communications as to Target Telephone 1, Special Agent Dziedzic again opined that the interception of wire communications of the interceptees  and others yet unknown on Target Telephone 1 is the only available investigative technique which has a reasonable likelihood of revealing and securing admissible evidence needed to establish the full scope and nature of the offenses being investigated. (September 5, 2008 Affidavit, ¶ 23)  In support of that opinion, Special Agent Dziedzic again discussed what normal investigative techniques had been used and been found insufficient, as well as those normal investigative techniques that had not been utilized because they reasonably appeared to be unlikely to succeed if tried or they are too dangerous to employ.  (September 5, 2008 Affidavit, ¶¶ 24-34)  That discussion of investigative techniques mirrors, with one exception, the discussion of investigation techniques in Special Agent Dziedzic's earlier affidavit.

The one major difference in the two affidavits involved events concerning CS1 that occurred after the first application was made.  According to the second affidavit, Young called CS1 on August 6, 2008 around 12:32 p.m. in an attempt to have CS1 come in for an appointment

immediately.  (September 5, 2008 Affidavit, ¶ 25)  Pursuant to a previous agreement with DEA, CS1 turned down that offer.  (September 5, 2008 Affidavit, ¶ 25)  CS1 did ask to come in another day, but Young said she just happened to have an opening that day and could not give CS1 an appointment for another day.  (September 5, 2008 Affidavit, ¶ 25)

According to Special Agent Dziedzic, that phone call did not change his opinion regarding the viability of using CS1 as a confidential source.  (September 5, 2008 Affidavit, ¶ 25)  Special Agent Dziedzic described how he believed, on the basis of an intercepted phone call, that Young only called CS1 out of desperation to fulfill George Williams' orders regarding how many patients he expected that particular day.  (September 5, 2008 Affidavit, ¶ 25)  Special Agent Dziedzic also affirmed that such short notice was inadequate to arrange for a covert operation.  (September 5, 2008 Affidavit, ¶ 25)

In his third affidavit, which was made in support of an application seeking authorization for the interception of wire and electronic communications as to Target Telephones 2 and 3, Special Agent Dziedzic opined that the interception of wire communications of the interceptees and others yet unknown on Target Telephone 2 and Target Telephone 3 is the only available investigative technique which has a reasonable likelihood of revealing and securing admissible evidence needed to establish the full scope and nature of the offenses being investigated. (October 7, 2008 Affidavit, ¶ 56)  In support of that opinion, Special Agent Dziedzic again discussed what normal investigative techniques had been used, and been found insufficient, as well as those normal investigative techniques that had not been utilized because they reasonably appeared to be unlikely to succeed if tried or they are too dangerous to employ.  (October 7,

-13-

2008 Affidavit, ¶¶ 57-68)  That discussion of investigative techniques mirrors, with one exception, the discussion of investigation techniques in Special Agent Dziedzic's second affidavit.

The one major difference in the third affidavit is the discussion of another confidential source, CS3.  According to the affidavit, sometime in April 2007, CS3 heard George Williams have a phone conversation pertaining to OxyContin.  (October 7, 2008 Affidavit, ¶ 18)  CS3 then asked if George Williams had the ability to obtain such pills because CS3 could redistribute them for profit. (October 7, 2008 Affidavit, ¶ 18)  George Williams informed CS3 that he may be able to arrange something.  (October 7, 2008 Affidavit, ¶ 18)  In late May or June 2007, CS3 purchased approximately two-hundred pills of 80mg OxyContin directly from George Williams for $4, 800.00 (October 7, 2008 Affidavit, ¶ 18)  Approximately one month later, "CS3 arranged for a second transaction of 200 pills of 80mg directly from GEORGE WILLIAMS [sic] for $4,800.00."  (October 7, 2008 Affidavit, ¶ 19)  In July of 2007, CS3 had a phone conversation with George Williams over Target Telephone 1 in an attempt to arrange a third transaction, but the price was too high.  (October 7, 2008 Affidavit, ¶ 19)

According to Special Agent Dziedzic, CS3 has been cooperating with the DEA since approximately May of 2008.  (October 7, 2008 Affidavit, ¶ 17)  Special Agent Dziedzic held a discussion with CS3 in an attempt to potentially insert CS3 directly in contact with George Williams, but CS3 related that George Williams had ceased any further contacts with CS3 upon learning the CS3 became a target of a separate law enforcement investigation.  Additionally, CS3

-14-

told Special Agent Dziedzic that George Williams and his employees are very secretive about their business.  (October 7, 2008 Affidavit, ¶ 58)

In his fourth affidavit, which was made in support of an application seeking the continued authorization for the interception of wire and electronic communications as to Target Telephones 2 and 3, Special Agent Dziedzic opined that the interception of wire communications of the interceptees  and others yet unknown on Target Telephone 2 and Target Telephone 3 is the only available investigative technique which has a reasonable likelihood of revealing and securing admissible evidence needed to establish the full scope and nature of the offenses being investigated.  (November 6,, 2008 Affidavit, ¶ 19)  In support of that opinion, Special Agent Dziedzic again discussed what normal investigative techniques had been used and been found insufficient, as well as those normal investigative techniques that had not been utilized because they reasonably appeared to be unlikely to succeed if tried or they are too dangerous to employ. (November 6, 2008 Affidavit, ¶¶ 18-32)  That discussion of investigative techniques mirrors, with one exception, the discussion of investigation techniques in Special Agent Dziedzic's third affidavit.

The one major difference in the fourth affidavit is a discussion relating to the possibility of approaching with one the suspects in light of recent traffic stops and seizures organized by the DEA.  According to Special Agent Dziedzic:

> Based on recent enforcement activities that resulted in seizures of controlled substances from GEORGE WILLIAMS [sic] and his associates, a consideration was made to flip an individual, like ADAMS [sic], into an informant and attempt to gain his cooperation. [Special Agent Dziedzic] believes that this attempt

would be too risky at this stage of the investigation. If ADAMS [sic] decided not to cooperate and then reveal his contact and conversation with law enforcement, it would support GEORGE WILLIAMS'S [sic] suspicion of an ongoing investigation rather than his current belief of coincidence and "weird" situations. Similarly, the same idea of gaining cooperation from BELL, GEORGE WILLIAMS or CHAPPLE [sic] could lead to the compromise of the ongoing T-III investigation and risk the chances of identifying pharmacies and pharmacists involved.

[November 6, 2008 Affidavit, ¶ 22]

### III. Discussion

In this case, as described above, each of Special Agent Dziedzic's affidavits state that the government used some normal investigative techniques; such as using confidential informants, doing physical surveillance and evaluating toll records, while rejecting the use of others; such as interviewing some of the suspects directly or using undercover agents, Closed Circuit Pole Cameras, trash searches, consensual telephone calls, Grand Jury investigations or search warrants. Special Agent Dziedzic's affidavits also state that, in light of the results of the normal investigative techniques used and the rejection of other tehniques, interception of wire communications were necessary to reveal and secure the admissible evidence needed to establish the full scope and nature of the offenses being investigated, including determining the identity of all the members of the organization, the make up of the organization, locations used to conduct illegitimate medical examinations, locations used to conceal prescriptions, and locations used to conceal scheduled controlled substances.

Despite the detailed and thorough explanations in Special Agent Dziedzic's affidavits, defendant argues that the affidavits failed to demonstrate necessity, or that other investigative

procedures had been tried and failed, had been exhausted, or why they reasonably appeared to be unlikely to succeed if tried or to be too dangerous.  In particular, defendant notes that, through the Department of Health and Human Services or its contracting agents, the government had access to every patient, every prescription, every pharmacy and every physician connected or associated with QRMP.  Defendant also notes that Special Agent Dziedzic admits in his affidavits that, through the normal investigative techniques used, the government had located cooperating individuals, watched and photographed "patients" entering and leaving each of the QRMP locations, and knew of the relevant pharmacies and their locations, the homes and residences of George Williams and some of the physicians and employees of the QRMP prior to seeking a wire tap.  Defendant further argues that an execution of search warrants would have revealed all of the other information sought by the government.[4]

This court finds that Special Agent Dziedzic's affidavits have met the requirements of 18 U.S.C. § 2518(3)(c).  As described above, the purpose of the requirements are "not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques."  Landmesser, 553 F.2d at 20 (quoting Pacheco, 489 F.2d at

---

[4]Defendant also argues that the evidence should be suppressed because Special Agent Dziedzic stated in his affidavits that he is withholding relevant information concerning the investigation and tailoring his statements in an attempt to secure wire tap authorization. However, Special Agent Dziedzic never said that he was withholding relevant information and, instead, merely stated that he did not include each and every fact know to him concerning the investigation and that he only set forth the essential facts.  (August 5, 2008 affidavit, ¶ 2; September 5, 2008 affidavit, ¶22-34, pp. 15-22; October 7, 2008 Affidavit, ¶ 2; November 6, 2008 Affidavit, ¶ 2)  Furthermore, defendant fails to identify any relevant information that was omitted from the affidavits.

565.  Here, the affidavits described the use and effect of the normal investigative techniques

used.  The affidavits, as well as defendant's motion, also identify the significant amount of

information that the government gained through those normal investigative techniques prior to

filing the applications for wiretaps.  However, that information did not encompass the full scope

and nature of the conspiracy.

Additionally, the affidavits also described why the normal investigative techniques not

used reasonably appeared to be unlikely to succeed if tried or to be too dangerous.  For example,

Special Agent Dziedzic stated that, while past use of confidential sources like CS1 and CS3 had

brought about relevant information, using those sources further was impossible given the past

history between the confidential sources and the targets of the investigation.  Special Agent

Dziedzic also described how the use of an undercover agent would also be unsuccessful because

he did not have a way to introduce an undercover agent into the organization without alerting

suspicions, and how Closed Circuit Pole Cameras, trash searches or consensual telephone calls

would be of limited utility.  Special Agent Dziedzic's affidavit further described how a Grand

Jury investigation, interview of the interceptees or their associates directly, and the use of search

warrants would only alert suspects to the investigation and prevent law enforcement from

identifying the full scope of the conspiracy as well as other co-conspirators.  Defendant fails to

show how any of the rejected techniques would have been reasonably likely to succeed and,

instead, merely states that Special Agent Dziedzic's conclusions were unsupported.  However, as

described above, the affidavits were very detailed as to why certain techniques were rejected.

Additionally, as noted by the government in its response, many of the reasons Special Agent Dziedzic used for rejecting certain investigative techniques have been previously accepted by courts.  See, e.g., Alfonso, 552 F.2d at 611 (noting that the affiant agent had stated that execution of a search warrant was unlikely to implicate the major controllers of the gambling operation and that, due to the clandestine nature of the operation, only wiretapping offered a reasonable likelihood of securing evidence necessary to prove the gambling violations and to apprehend the top figures of the organization); United States v. Lambert, 771 F.2d 83, 91 (6th Cir. 1985) ("The affidavits in support of the wiretap application explained in great detail that other investigative measures could not reasonably be used because of Lambert's extreme (and correct) suspicion that his activities were being monitored and the fact that alternative investigative procedures, such as directly questioning Lambert and his associates, would likely alert the subjects to the presence and scope of the investigation."); United States v. Rodriguez, 734 F. Supp.116, 122 (S.D. N.Y. 1990) ("Using the grand jury would not be helpful because the witnesses who could provide information were part of the conspiracy, and would likely not testify voluntarily. Moreover, it would alert the subjects that they were being investigated. Using grand jury subpoenas would not be helpful because low-level confederates would not be able to provide information about the manner in which their higher-level confederates were running the organization.").

As discussed above, "the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted," Giacalone, 853 F.2d at 480 (quoting Alfano, 838 F.2d at 163, and  "[a]ll that is

required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." Alfano, 838 F.2d at 163-64 (quotation omitted).  Here, given the that the affidavits detailed the normal investigative techniques used, information gained from those techniques as well as the information still needed, and the consideration and rejection of other techniques, Special Agent Dziedzic's affidavits have met the requirements of 18 U.S.C. § 2518(3)(c) and the evidence obtained or derived from the interception of wire communications should be suppressed.

## IV.  Conclusion

For the reasons discussed above, this court recommends that defendant George Williams' motion be **DENIED** and that the evidence obtained or derived from the wiretaps in this case not be suppressed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: January 29, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 29, 2010.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan

-21-