UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff(s),           CASE NUMBER: 09-20224
                                      HONORABLE VICTORIA A. ROBERTS

v.

D-5    ERNEST LARRY ADAMS,
D-7    NEIL CHAPPLE,

        Defendant(s).
_____/

## ORDER

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

This matter is before the Court on Defendant Neil Chapple's "Motion to Suppress – Oct. 27, 2008." (Doc. #122). Chapple asks the Court to suppress statements he made during an unlawful arrest, as well as the Vicodin pills, and $2,450.00 in United States currency seized during the arrest. Co-Defendant Ernest Larry Adams joins.

On December 1, 2009, the Court referred this motion to Magistrate Judge Virginia A. Morgan for a Report and Recommendation ("R&R"). The Magistrate Judge held an evidentiary hearing on January 12, 2010 and January 15, 2010. On March 1, 2010, the Magistrate Judge filed an R&R, recommending that the Court DENY Chapple's motion to suppress.

Chapple filed objections on March 15, 2010, and a Supplemental Brief on June 22, 2010. The Government responded on July 6, 2010.

For the reasons stated, the Magistrate Judge's R&R is **ADOPTED**, and

1

Chapple's motion is **DENIED**.

## II. BACKGROUND

### A. Drug Enforcement Administration Investigation

Special Agent Christopher Dziedzic of the Drug Enforcement Administration ("DEA") testified that the DEA had an ongoing investigation of co-Defendant George Williams. According to SA Dziedzic, monitoring agents told him they intercepted a wiretap conversation between Williams and Chapple that led SA Dziedzic to believe Chapple would meet Williams at a McDonald's Restaurant to obtain Vicodin pills.

Because the Milner Arms Apartments are close to SA Dziedzic's office, and SA Dziedzic knew drug activity occurred there, SA Dziedzic went there. He saw Adams leave the building and get in his car. SA Dziedzic followed Adams to a McDonald's parking lot. A gray Ford Expedition, driven by Chapple, pulled next to Adams' car.

SA Dziedzic observed Adams get out of his car with a bag and get into the passenger seat of the Expedition. Adams then returned to his car, and left. Chapple left the parking lot in the Expedition.

SA Dziedzic followed Chapple. He eventually asked the Detroit Police Department ("DPD") to have a unit in the area conduct a traffic stop.

### B. Traffic Stop

On October 27, 2008, Sgt. Larry Mennke and Officer Robert Gadwell of the DPD were in a police raid van working for the "Halloween Task Force," when they received a request from a police dispatcher that the DEA wanted a gray Ford Expedition stopped in the Flanders/Newport area. The police dispatcher did not provide a description of the

driver or the reason for the traffic stop.

While looking for the car, Sgt. Mennke slammed on the brakes of the raid van to avoid being hit by the Expedition driven by Chapple, as Chapple backed out of a driveway. Sgt. Mennke allowed the car to back out, then activated the oscillating police light to initiate the traffic stop. The traffic stop was for this near-miss crash.

Chapple says he did not see the police van because the headlights were not on. Sgt. Mennke says the headlights were on.

**C. Seizure of 1,000 Vicodin Pills and $2,450.00 in United States Currency**

Sgt. Mennke approached the driver's side of the car, and Officer Gadwell approached the passenger side. The Expedition's interior light was on, and Officer Gadwell illuminated the inside of the car with his flashlight.

Officer Gadwell testified that he saw two large pill bottles on the front passenger seat, and he could read a label which said "Hydrocodone." "Hydrocodone" is another name for Vicodin.

Officer Gadwell signaled to Sgt. Mennke that there was incriminating evidence in the car, and Sgt. Mennke asked Chapple to step out of the car. When Chapple was out of the car, Officer Gadwell opened the passenger side door and confiscated two large pill bottles, each containing 500 Vicodin pills.

Officer Gadwell searched the car and found a large brown paper bag in the front passenger side on the floor.

Chapple falsely told Sgt. Mennke and Officer Gadwell that the Vicodin pills were for his personal use.

After Chapple was arrested, Sgt. Mennke confiscated $2,450.00 in United States currency from Chapple's pocket.

### D. Magistrate Judge's Findings

Chapple seeks to suppress the evidence that was seized on October 27, 2008. He argues that: (1) the traffic stop was improper; (2) the Vicodin pill bottles were not in plain view; (3) it was not readily apparent that the Vicodin pills were contraband or intrinsically incriminating; (4) the car was searched without probable cause; and (5) the Vicodin pill bottles and currency were seized without probable cause.

The Magistrate Judge says the search and seizure should not be upheld pursuant to the automobile exception, but Chapple's motion should be denied because: (1) the traffic stop was lawful based on both probable cause, and under *Terry v. Ohio*, 392 U.S. 1 (1968); and (2) the seizure of the Vicodin pill bottles was lawful under the plain view doctrine.

### E. Chapple's Objections

Chapple objects to the Magistrate Judge's findings. He says: (1) the traffic stop was improper; (2) the Vicodin pill bottles were not in plain view; and (3) the incriminating nature of the Vicodin pill bottles was not immediately obvious.

## III. APPLICABLE LAW AND ANALYSIS

### A. Traffic Stop

"[S]topping an automobile and detaining its occupants constitute[s] a 'seizure' within the meaning of [the Fourth Amendment]." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

4

Sgt. Mennke and Officer Gadwell's decision to conduct a traffic stop is reasonable and complies with the Fourth Amendment guarantee against "unreasonable" searches and seizures, if they had probable cause to believe Chapple committed a traffic infraction. *See Whren v. United States*, 517 U.S. 806, 810 (1996) (citing *Prouse*, 440 U.S. at 659 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (*per curiam*)). Probable cause means "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

Chapple says neither Sgt. Mennke nor Officer Gadwell is credible; they did not include information about the DEA investigation, or the fact that the DEA requested the traffic stop, in the police report. In addition, Chapple says his failure to yield was excused because the police van did not have headlights on, and he could not see the van.

The Court finds Sgt. Mennke and Officer Gadwell had reasonable grounds to believe Chapple committed a traffic violation. They did not include information about the DEA in the police report at the DEA's request, because the DEA did not want to compromise the investigation. Further, their belief that Chapple failed to yield while backing out of a driveway is supported by Chapple's testimony that he did not initially see the raid van, but he noticed the van tailgating him. This shows the van was close to the driveway when Chapple backed out.

Because the Court finds there was probable cause to believe Chapple committed a traffic infraction, the Court need not discuss whether the traffic stop was legal based

on SA Dziedzic's request.

The next question the Court addresses is whether the Plain View Doctrine applies.

### B. Plain View Doctrine

"The law recognizes the plain view doctrine as an exception to the warrant requirement." *United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007) (citing *Horton v. California*, 496 U.S. 128, 134 (1990)).

> Four factors must be satisfied in order for the plain view doctrine to apply: (1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object.

*Garcia*, 496 F.3d at 508 (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990); *United States v. McLevain*, 310 F.3d 434, 438-39 (2002)).

Chapple disputes the first three elements.

#### 1. Plain View

Chapple says the Vicodin pill bottles were not in plain view. According to Chapple, the Vicodin pill bottles were delivered to him in a bag that Officer Gadwell could not see through, and there was no reason for him to remove the bottles from the bag. Chapple says he simply looked inside the bag to make sure the bottles were there, closed the bag up, and set the bag on the passenger seat.

However, Chapple does have credibility issues; he admitted lying to the police during this traffic stop, and during the traffic stop on July 3, 2008. On the other hand, Officer Gadwell's testimony was credible.

6

Importantly, Chapple indicated on an intercepted wiretap conversation with Williams, that the police found the Vicodin pill bottles on the seat; he did not tell Williams the bottles were in a bag on the seat.

This element is met.

### 2. Officer Legally Present

Because the traffic stop was lawful, Officer Gadwell was legally present at the front passenger's side window of the Expedition.

This element is met.

### 3. Object's Incriminating Nature Immediately Apparent

> [I]n determining whether an object's incriminating nature is "immediately apparent," we look to three factors, none of which is necessary but each of which is instructive: (1) "a nexus between the seized object and the items particularized in the search warrant"; (2) "whether the 'intrinsic nature' or appearance of the seized object gives probable cause to believe that it is associated with criminal activity"; and (3) whether "the executing officers can *at the time* of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature." *Id.* (quoting *United States v. Beal*, 810 F.2d 574, 576-77 (6th Cir. 1987)). In addition to these three factors, we have specifically held that an object's incriminating nature is not immediately apparent if it "appears suspicious to an officer but further investigation is required to establish probable cause as to its association with criminal activity[.]" *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 555 (6th Cir. 2003) (quoting *McLevain*, 310 F.3d at 443). Moreover, the officer must recognize the incriminating nature of an object as a result of his "immediate" or "instantaneous sensory perception."

*Garcia*, 496 F.3d at 510-11 (emphasis in original).

Chapple says even assuming Officer Gadwell's "instantaneous sensory perception" could identify the bottles as manufacturer bottles of Hydrocodone, a controlled substance, there are legitimate uses for Hydrocodone, and the appearance of

7

the bottles did not make it immediately obvious that they contained contraband or probable cause of a crime.

The Court disagrees.

Officer Gadwell observed two large bottles of pills. One of the bottles was labeled "Hydrocodone." Officer Gadwell testified that through his experience working in narcotics, Hydrocodone is strictly regulated, and doctors do not prescribe bottles the size Chapple had.

Given the size of the bottles and the label, Officer Gadwell had probable cause to believe they were associated with criminal activity. Officer Gadwell did not need further investigation; he immediately knew the large bottles of prescription drugs were illegal, and not the usual prescription bottle that a patient might receive when a prescription is filled at a pharmacy.

This element is met.

The Court finds the Vicodin pill bottles were legally seized under the Plain View Doctrine.

## IV. CONCLUSION

The Court **ADOPTS** the Magistrate Judge's R&R. Chapple's motion is **DENIED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
Dated: August 4, 2010          United States District Judge

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 4, 2010.

s/Carol A. Pinegar
Deputy Clerk