**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff(s),**　　　　**CASE NUMBER: 09-20224
HONORABLE VICTORIA A. ROBERTS**

**v.**

**ERNEST LARRY ADAMS,**

        **Defendant(s).**
_____/

## ORDER

**I.　INTRODUCTION AND PROCEDURAL HISTORY**

This matter is before the Court on Defendant Ernest Adams' "Motion to Suppress – Oct. 16, 2008." (Doc. #131). Adams asks the Court to suppress statements he made during an unlawful arrest, as well as the controlled substances seized on October 16, 2008.

On December 15, 2009, the Court referred this motion to Magistrate Judge Virginia A. Morgan for a Report and Recommendation ("R&R"). The Magistrate Judge held an evidentiary hearing on January 15, 2010 and February 12, 2010. On March 10, 2010, the Magistrate Judge filed an R&R, recommending that the Court DENY Adams' motion to suppress.

Adams filed objections on March 24, 2010, and a Supplemental Brief on August 10, 2010. The Government responded on August 26, 2010.

For the reasons stated, the Magistrate Judge's R&R is **ADOPTED**, and Adams' motion is **DENIED**.

1

## II. BACKGROUND

### A. Drug Enforcement Administration Investigation

The Drug Enforcement Administration ("DEA") began an investigation of co-Defendant George Williams in June 2007. In August 2008, the DEA put a wiretap on co-Defendant Yolanda Young's cell phone. In October 2008, the DEA put a wiretap on two of Williams' cell phones.

On October 14, 2008, the DEA intercepted a conversation in which Adams discussed meeting an individual named Michael McDonald at Henry the Hatter, to sell him OxyContin pills. The DEA went to that location. Adams pulled up in a silver Taurus and delivered the pills to McDonald.

On October 16, 2008, the DEA intercepted a conversation between Williams and a pharmacist at the East Side Discount Pharmacy. Williams told the pharmacist he would send his cousin to pick up an order. Shortly after that phone call, the DEA intercepted a conversation in which Williams told Adams to go to the East Side Discount Pharmacy, and pick up the OxyContin pills.

When Special Agent Christopher Dziedzic of the DEA went to the East Side Discount Pharmacy, he saw Adams' silver Taurus parked outside. SA Dziedzic then saw Adams leave the pharmacy with a dark colored shopping bag. SA Dziedzic concluded that the bag contained the illegal drugs that Williams told Adams to pick up from the pharmacy.

SA Dziedzic believed he had probable cause to conduct a traffic stop, but he did not want to compromise the investigation. He contacted the Michigan State Police and

2

told the operator he wanted a trooper to conduct a traffic stop.  SA Dziedzic provided the license plate number of the car and said he believed the driver had narcotics in a dark colored bag.

Before the Michigan State Police conducted the traffic stop, the monitoring agents intercepted a conversation in which Adams asked Williams what he should do with the order he picked up.  Since Williams was not in the area, Adams said he would keep it until tomorrow.

### B. Traffic Stop

An operator at the Michigan State Police post told Trooper Jack Taeff and Trooper Jonathan Henry that the DEA wanted them to stop a Ford Taurus and seize prescription narcotics.

At approximately 7:00 p.m. on October 16, 2008, Trooper Taeff and Trooper Henry stopped Adams for speeding.  While the troopers had their own reason to conduct a traffic stop, Trooper Henry testified that they really stopped Adams at the DEA's request.

Trooper Taeff approached the driver's side, and Trooper Henry approached the passenger's side.  Trooper Taeff saw a black plastic bag on the passenger's side, but he could not see inside the bag.  Trooper Henry testified that he immediately saw white bags inside the black bag, and he knew from his experience that the bags contained prescriptions from a pharmacy.  Trooper Henry could not see inside the white bags; they were stapled closed.

Trooper Henry seized approximately 300 OxyContin pills from Adams' car.

Trooper Henry prepared a report, but omitted any reference to the DEA, at SA

3

Dziedzic's request. He did not want to compromise the investigation.

### C. Magistrate Judge's Findings and Adams' Objections

Adams seeks to suppress the evidence that was seized on October 16, 2008. He argues that: (1) the traffic stop was improper; (2) the OxyContin pills were not in plain view; (3) it was not readily apparent that the OxyContin pills were contraband or intrinsically incriminating; (4) the car was searched without probable cause; and (5) the OxyContin pills were seized without probable cause.

The Magistrate Judge says Adams' motion should be denied because the traffic stop and search were proper pursuant to the automobile exception. In the alternative, the Magistrate Judge says: (1) the traffic stop was lawful based on both probable cause, and under *Terry v. Ohio*, 392 U.S. 1 (1968); and (2) the seizure was lawful under the plain view doctrine.

Adams objects. He says the Magistrate Judge misapplied the collective knowledge and plain view doctrines.

## III. APPLICABLE LAW AND ANALYSIS

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted). One specific and well-delineated exception is the automobile exception.

Under the automobile exception, police officers may conduct a warrantless search of a car, if they have probable cause to believe the car contains evidence of a

crime.  *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (citations omitted).

Probable cause means "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion."  *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

The fact that SA Dziedzic did not personally conduct the search of Adams' car is of no moment; probable cause can be established through the collective knowledge of the police.  *See United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977) (citations omitted).  In determining whether Trooper Taeff and Trooper Henry had probable cause to stop Adams and search his car, the Court looks to SA Dziedzic's knowledge.  *See United States v. Hensley*, 469 U.S. 221, 230-32 (1985).

SA Dziedzic learned that two days before the traffic stop, Adams sold OxyContin pills to McDonald.  On the day of the traffic stop, SA Dziedzic learned that Williams wanted Adams to pick up OxyContin pills from the East Side Discount Pharmacy.  SA Dziedzic personally observed Adams leave East Side Discount Pharmacy with a bag.  Subsequently, he learned that Adams would keep the OxyContin pills overnight.

Viewing the evidence in the light most favorable to the Government, and based on the totality of the circumstances, Trooper Taeff and Trooper Henry – through SA Dziedzic's knowledge, as well as their knowledge from the operator at the Michigan State Police post that the DEA wanted them to recover prescription narcotics – had probable cause to believe Adams' car contained evidence of a crime.

Because the Court finds the search was valid based on the automobile exception, it need not address whether the search was valid based on a *Terry* stop, or

5

based on probable cause to believe Adams committed a civil infraction.

## IV. CONCLUSION

The Court **ADOPTS** the Magistrate Judge's R&R. Adams' motion is **DENIED**.

**IT IS ORDERED**.

<pre>
                                        S/Victoria A. Roberts
                                        Victoria A. Roberts
                                        United States District Judge
</pre>

Dated:  September 2, 2010

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 2, 2010.
>
> s/Carol A. Pinegar
> Deputy Clerk